UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Leah Moore

    v.      Case No. 24-cv-031-SE-TSM
    Opinion No. 2024 DNH 083

Health Care and Rehabilitation
Services of Southeastern Vermont, Inc.

**O R D E R**

Health Care and Rehabilitation Services of Southeastern Vermont, Inc. ("HCRS") terminated Leah Moore in 2021 when she did not comply with its mandatory COVID-19 vaccination policy. Moore alleges that HCRS violated her rights under state and federal statute by discriminating against her based on her religion, failing to accommodate her religious beliefs, and retaliating against her. She also alleges that HCRS wrongfully terminated her under New Hampshire common law because of her religious beliefs and medical concerns and because she refused the vaccine. HCRS moves to dismiss the complaint under Rule 12(b)(6) on the basis that it fails to state a claim.

Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

To test a complaint's sufficiency, the court must first identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a

cause of action.'" Ocasio–Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. See id.

Background

Consistent with this standard of review, the following facts taken from the complaint are assumed true. Moore worked for HCRS from March 2014 until December 2021. At the time of her termination, she worked as a Billing Specialist and had worked remotely from her home for much of her last two years with the company. In July 2021, HCRS asked Moore to return to HCRS's office three days per week and work remotely only two days per week. Moore kept that schedule from July 2021 until her last two or three weeks with HCRS, during which she exclusively worked remotely again.

During the COVID-19 pandemic, HCRS required Moore to follow certain protocols. On the days that she went into the office, Moore wore a mask and took her temperature, logging the results into HCRS's website. HCRS also required her to take a weekly COVID-19 test, regardless of whether she went into the office. On or about October 15, 2021, HCRS issued a mandatory COVID-19 vaccination policy. Under the policy, HCRS would terminate any employee who was not vaccinated against COVID-19 by December 1, 2021, and had not received a medical or religious exemption.

Moore "objected to the vaccin[e] on the basis of religion, in that she objected to it since aborted fetus cell lines were used in the development of the vaccine." Doc. no. 1-1, ¶ 11. But she "was primarily concerned [about being vaccinated] for medical reasons" because of her history

of pneumonia and pleurisy, as well as her "complicated" family medical history. Id. Despite her concerns, Moore did not request a medical or religious exemption.

Moore believed that making a request would be futile for two reasons. First, Ms. Reynolds,[1] a Medical Nurse Supervisor, told Moore that HCRS would deny any exemption request. Specifically, Reynolds stated that she had attended the HCRS Senior Leadership Team meetings during which the team discussed the vaccination policy. Reynolds told Moore that, although HCRS would allow employees to file religious and medical exemption requests, "even if the staff applies for the exemptions, no one will be granted one." Doc. no. 1-1, ¶ 20. Second, Moore was aware that HCRS had denied at least five medical or religious exemption requests submitted by other HCRS employees.

Therefore, Moore did not apply for an exemption because she determined that applying for one would be futile. She also wanted to avoid an "interrogation process" without any chance of success. Id., ¶ 21. Although Moore did not officially apply for an exemption, she did tell her supervisor, Heather Lockwood, that she wanted a religious exemption to the vaccination policy.

On November 18, 2021, HCRS informed Moore that it would terminate her employment on November 30, 2021, because she refused to be vaccinated in accordance with the vaccination policy. HCRS fired Moore effective December 1, 2021.

Discussion

Moore's complaint includes four counts. The first three counts allege that HCRS violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and New Hampshire Revised Statute Annotated ("RSA") § 354-A by discriminating against Moore on the basis of her

---

[1] The complaint does not provide Ms. Reynolds's first name.

3

religion: religious discrimination/harassment/hostile work environment (Count I); religious discrimination/failure to accommodate (Count II); and retaliation based on religion (Count III). Count IV asserts a claim for wrongful discharge. Again, HCRS moves to dismiss the complaint in its entirety. Moore objects.

I.    Title VII Claims

"Because the New Hampshire Supreme Court relies on Title VII cases to analyze claims under RSA 354–A, the court will address [Moore's] state and federal claims together using the Title VII standard." Hubbard v. Tyco Integrated Cable Sys., Inc., 985 F. Supp. 2d 207, 218 (D.N.H. 2013) (quotation and alteration omitted). Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [ ] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). A plaintiff can assert a religious discrimination claim under Title VII based on different theories, and "each of these theories of employment discrimination requires proof of different elements." Equal Emp. Opportunity Comm'n v. Baystate Med. Ctr., Inc., No. 3:16-CV-30086-MGM, 2017 WL 4883453, at *2 (D. Mass. Oct. 30, 2017) (citing Sánchez-Rodríguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 12-13 (1st Cir. 2012) and Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003)).

A.    Count I – Harassment and Hostile Work Environment

In Count I, Moore alleges that HCRS created a hostile work environment because of her religion.

> To make out a viable [Title VII hostile work environment] claim based on
> religion, the plaintiff must establish that: (1) she is a member of a protected class;

4

> (2) she was subject to uninvited harassment; (3) the offending conduct was because of her religion; (4) the harassment was severe and pervasive; (5) the offending conduct was both objectively and subjectively offensive and (where employer liability is sought); (6) there was a basis for such liability.

Rivera v. P.R. Aqueduct and Sewers Auth., 331 F.3d 183, 189 (1st Cir. 2003) (emphasis omitted).

"In assessing whether conduct is severe or pervasive and both objectively and subjectively offensive, [a court] evaluate[s] 'the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance.'" Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 217 (1st Cir. 2016) (internal quotations and citations omitted). Whether alleged harassment "was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment" is a question typically left to the jury. Rosario v. Dep't of Army, 607 F.3d 241, 247 (1st Cir. 2010). But Moore must first plausibly allege that she was harassed at all. She cannot do so by relying on conclusory statements. Rae v. Woburn Public Schools, 113 F.4th 86, 111 (1st Cir. 2024). Instead, "to clear the plausibility hurdle, a complaint must contain enough facts to raise a reasonable expectation that discovery will reveal evidence sufficient to flesh out a viable claim." Id. (quotations and alterations omitted).

Moore asserts in her complaint that "she was treated differently than her co-workers, ostracized, and experienced a hostile environment, which no reasonable person should be forced to endure." Doc. no. 1-1, ¶ 57. However, her complaint contains no factual allegations to support those conclusory assertions. Indeed, Moore does not allege that she was harassed at all, much less that she suffered harassment that could be considered severe and pervasive.

In her objection to HCRS's motion to dismiss, Moore states that she has alleged sufficient facts to show that she was harassed and subjected to a hostile work environment,

including "being aware of interrogations of other employees" when they applied for exemptions to the vaccination policy and "being told it did not matter what she put in an exemption request because they were all being denied." Doc. no. 6-1 at 10. She offers no argument or case law to support her contention that those facts — which essentially amount to her awareness of the application process for an exemption to the vaccination policy and that HCRS would not grant her an exemption if she applied for one — give rise to a Title VII or RSA 354-A hostile work environment claim. The court grants HCRS's motion to dismiss as it pertains to Moore's claim for hostile work environment.

The complaint is not a portrait of clarity and the briefing on the motion to dismiss continues to confuse the legal theories underpinning each count, especially Count I. The court interprets Count I to assert a claim for hostile work environment. To the extent that Moore intended to allege in Count I that HCRS failed to accommodate her religious beliefs, that claim is contained in Count II and is addressed below. Count I is dismissed.

B.  Count II – Failure to Accommodate

Moore alleges that HCRS discriminated against her by failing to accommodate her religious beliefs because it did not allow her to work remotely full-time or grant her an exemption to the vaccination policy. "Under Title VII, an employer must offer a reasonable accommodation to resolve a conflict between an employee's sincerely held religious belief and a condition of employment, unless such an accommodation would create an undue hardship for the employer's business." Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004) (citing 42 U.S.C. § 2000e(j)).

The First Circuit "applies a two-part framework to religious discrimination claims under Title VII. First, a plaintiff must make her *prima facie* case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023) (citation and alterations omitted). "If the plaintiff establishes her *prima facie* case, the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." Cloutier, 390 F.3d at 133.

HCRS argues that Moore has not sufficiently made her *prima facie* case because she has not alleged a bona fide religious practice, much less one that conflicted with an employment requirement. HCRS also argues that Moore does not allege that she requested an accommodation, so it cannot be liable for failing to offer her one. Neither argument entitles HCRS to dismissal of Count II at this stage of the litigation.

In considering a religious discrimination claim, a court must determine "whether [a plaintiff's] assertions constitute *religious* beliefs—as opposed to philosophical, medical, or scientific beliefs, or personal fears or anxieties." Together Emps. v. Mass General Brigham, Inc., 573 F.Supp.3d 412, 440 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022). But "Title VII's 'capacious definition' of religion 'leaves little room for a party to challenge the religious nature of an employee's professed beliefs,' and that sincerity depends on a fact-intensive assessment of credibility." Id. at 441 (quoting Equal Emp. Opportunity Comm'n v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 56 (1st Cir. 2002)).

Here, HCRS argues that Moore does not identify a particular religion or practice that conflicts with the vaccination policy. But Moore alleges that she objected to the vaccine because "aborted fetus cell lines were used in" its development. Doc. no. 1-1, ¶ 11. Although Moore does

7

not explain why the alleged use of aborted fetus cells in vaccine development conflicts with her religious beliefs, "[w]hen presented with objections to vaccination based on the use of fetal cell lines, multiple courts have determined that" a plaintiff has asserted a sincerely held religious belief. Antredu v. Massachusetts Dep't of Youth Servs., No. CV 22-12016-WGY, 2024 WL 1539725, at *5 (D. Mass. Apr. 9, 2024) (citing cases); Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 16 (1st Cir. 2024). Thus, Moore has sufficiently alleged that her religious beliefs precluded her from complying with the vaccination policy, which caused HCRS to terminate her employment.

Turning to the matter of a reasonable accommodation, HCRS argues that it had no obligation to provide Moore a reasonable accommodation and cannot be liable for failing to do so because Moore never requested an accommodation. However, Moore alleges that she told her supervisor, Heather Lockwood, that she wanted a religious exemption to HCRS's vaccination policy. Doc. no. 1-1, ¶ 32. Reading the complaint as a whole in the light most favorable to Moore, she alleges that HCRS was aware of her desire for a religious exemption to the vaccine policy. She further alleges that HCRS never intended to grant exemption requests and discouraged her and other employees from requesting exemptions by making the process arduous and invasive. In addition, Moore alleges that HCRS could have reasonably accommodated her by allowing her to work remotely full-time, especially because she had spent a substantial amount of her time working remotely in the two years preceding her firing.

HCRS points out several purported flaws in Moore's allegations in support of Count II, including that Moore alleges that she was more concerned about the vaccine for medical reasons rather than on religious grounds, and that she does not allege that she requested to work remotely full-time or brought her concerns to a decision-maker at HCRS. Those arguments are better

presented in a properly supported motion for summary judgment. At this stage of the litigation, the allegations in Moore's complaint are sufficient to make out a failure-to-accommodate claim under Title VII. See, e.g., Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 12 (1st Cir. 2012) (noting that Title VII cases "involving reasonable accommodation turn heavily upon their facts and an appraisal of the reasonableness of the parties' behavior" (quotation omitted)).

C.     Count III - Retaliation

Moore alleges that HCRS retaliated against her based on her religious beliefs. The alleged acts of retaliation include discouraging her from requesting a religious accommodation, requiring her to be tested for COVID-19 and wear a mask, and terminating her when she refused to comply with the vaccination policy.

To demonstrate a claim for retaliation under Title VII, a plaintiff "must show that (1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." Stratton v. Bentley Univ., 113 F.4th 25, 41–42 (1st Cir. 2024) (quotations omitted). In other words, in a Title VII retaliation claim, the plaintiff must show that the protected activity was the but-for cause of the adverse employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

Moore alleges that she engaged in protected activity by expressing her desire for a religious exemption to the vaccination policy. Although it is far from clear that merely requesting a religious exemption to a mandatory vaccination policy constitutes protected conduct for the purpose of a Title VII retaliation claim, the court assumes without deciding that Moore has plausibly alleged the first element of that claim. See, e.g., Rosario-Velazquez v. Corporacion

9

Educativa Ramon Barquin, No. CV 23-1347 (PAD), 2024 WL 3522412, at *2 n.5 (D.P.R. July 24, 2024) (casting doubt on the theory that applying for a religious exemption to a vaccine mandate constitutes protected conduct for the purpose of a Title VII retaliation claim, but assuming for the purpose of the analysis that the plaintiff engaged in protected activity). And Moore's termination is the classic example of a materially adverse action, which satisfies the second element of a retaliation claim.

However, wholly absent from Moore's complaint is any allegation that satisfies the third element of a retaliation claim: that her expression of a desire for a religious exemption to the vaccination policy was the but-for cause of her termination. Rather, she alleges that HCRS imposed the vaccination policy on all employees and terminated her for failing to comply with that policy. Doc. no. 1-1, ¶ 27. Such an allegation fails to plead a plausible claim for retaliation. See, e.g., Usmanov et al. v. Mass. Fin. Servs. Co., No. 1:23-CV-11631-JEK, 2024 WL 4028255, at *5 (D. Mass. Sept. 3, 2024) ("Put otherwise, where an employer provides notice of a mandatory vaccination policy and the consequences for noncompliance, and then terminates a plaintiff's employment in accordance with that policy, a plaintiff cannot make out a prima facie case of retaliation unless they allege facts that go beyond the employer's mere enforcement of its policy."); Schmidt v. Tchrs. Ins. & Annuity Ass'n of Am., No. 3:23-CV-00881-FDW-DCK, 2024 WL 3380152, at *4 (W.D.N.C. July 11, 2024) (dismissing Title VII retaliation claim because "[o]n the face of the Complaint, Defendant terminated Plaintiff because he did not comply with the vaccination mandate prior to the March 1, 2022, deadline, not because he submitted exemption requests or objected on religious grounds"). Thus, the court grants HCRS's motion to dismiss as to Count III.

II.      <u>Wrongful Discharge</u>

Moore alleges in Count IV that HCRS wrongfully discharged her because of her refusal to be vaccinated against COVID-19. A wrongful discharge claim under New Hampshire law contains two elements: "(1) the employer terminated the [plaintiff's] employment out of bad faith, malice, or retaliation; and (2) the employer terminated the employment because the employee performed acts that public policy would encourage or because she refused to perform acts that public policy would condemn." Donovan v. S. New Hampshire Univ., 175 N.H. 489, 492 (2022).

Under New Hampshire law, an "employer's bad faith or malice may be established where (i) an employee is discharged for pursuing policies condoned by the employer, (ii) the record does not support the stated reason for the discharge, or (iii) disparate treatment was administered to a similarly situated employee." Hidalgo-Semlek v. Hansa Med., Inc., 498 F. Supp. 3d 236, 268 (D.N.H. 2020) (quotations omitted). "Bad faith can also be discerned from the course of events surrounding an employee's discharge, 'the manner in which the plaintiff was discharged,' or shifting reasons for an employee's termination." Id. (quoting Cloutier v. Great Atl. & Pac. Tea Co., 121 N.H. 915, 921 (1981)).

Again, the complaint alleges that HCRS implemented the vaccination policy, Moore did not comply with the policy, and, as a result, HCRS fired her. Moore alleges no facts that could allow the court to draw the reasonable inference that her termination was motivated by bad faith, malice, or retaliation. Nor does she address that element of a wrongful discharge claim in her briefing.[2]

---

[2] In a footnote in her objection to HCRS's motion to dismiss, Moore notes that this court "allowed [a] wrongful discharge claim to continue" past the motion to dismiss stage in a similar

11

Moore has not sufficiently alleged the first element of a wrongful discharge claim and HCRS is therefore entitled to dismissal of that claim. Because Moore does not sufficiently allege the first element of the claim, the court does address HCRS's argument that Moore failed to allege the second prong of a wrongful discharge claim.³

Conclusion

For the foregoing reasons, the defendant's motion to dismiss the complaint (doc. no. 3) is granted as to Counts I, III, and IV and is denied as to Count II.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

September 25, 2024

cc: Counsel of Record.

---

case against HCRS. Doc. no. 6-1 at 20 n.9 (citing McNeil v. Health Care and Rehabilitation Services, No. 23-cv-2-AJ, slip op. (D.N.H. Apr. 17, 2023)). In addition to the factual differences in that case, it is worth noting that HCRS did not move in that case to dismiss the plaintiff's wrongful termination claim on the ground that the plaintiff had failed to allege bad faith, malice, or retaliation. See id.; see also id. doc. no. 6.

³ The court notes that the court in McNeil granted HCRS's motion to dismiss the plaintiff's wrongful discharge claim to the extent that the claim was based on her "theory that HCRS's policy and conduct were contrary to either the Nuremberg Code or the [Food, Drug, and Cosmetic Act]." Id. at 7-10. Moore asserts that same theory in support of her wrongful discharge claim in this case. See doc. no. 1-1, ¶¶ 72-76.